# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

**DONNA NIXON,**

　　*Plaintiff,*　　　　　　　　　　　　Case No.: 3:26-cv-1817

　　*v.*

**CLARITY SERVICES, INC.,**　　　　　　**JURY TRIAL DEMANDED**

　　*Defendant.*

## COMPLAINT AND JURY TRIAL DEMAND

COMES NOW the Plaintiff, Donna Nixon ("Ms. Nixon"), by and through her attorneys, Seraph Legal, P.A., and complains of the Defendant, Clarity Services, Inc. ("Clarity" or "Defendant"), stating as follows:

## PRELIMINARY STATEMENT

1.　　This is an action for damages arising under the Fair Credit Reporting Act, 15 U.S.C. § 1681, et seq. ("FCRA").

## JURISDICTION AND VENUE

2.　　Subject matter jurisdiction arises under 28 U.S.C. § 1331, as the FCRA is a federal statute.

3.　　The Defendant is subject to the provisions of the FCRA and to the jurisdiction of this Court pursuant to § 48.193, Fla. Stat. and Fed. R. Civ. P. 4(k).

4.　　Venue is proper in the Middle District of Florida, Jacksonville Division, because the because the acts complained of were committed and/or caused by the Defendant within Duval County, Florida.

## PARTIES

5.    Ms. Nixon is a natural person residing in Jacksonville, Duval County, Florida.

6.    Ms. Nixon is a Consumer as defined by the FCRA, 15 U.S.C. § 1681a(c).

7.    Clarity is a Delaware corporation, with a principal business address at 475 Anton Boulevard, Costa Mesa, CA 92626.

8.    Clarity is registered to conduct business in the State of Florida, where its Registered Agent is CT Corporation System, 1200 South Pine Island Rd., Plantation, FL 33324.

9.    Clarity is a Consumer Reporting Agency ("CRA") within the meaning of the FCRA, 15 U.S.C. § 1681a(f), in that it, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and uses various means of interstate commerce for the purpose of preparing or furnishing consumer reports, specifically including mail and telephone communications.

## FACTUAL ALLEGATIONS

### Clarity's Inaccurate Consumer Reports Regarding Ms. Nixon

10.    Around July 20, 2022, Clarity began maintaining a credit file on Ms. Nixon.

11.    Clarity, a CRA that predominantly serves the needs of online lenders

making short-term loans, programs its systems to acquire and report as much information as possible, with little regard to the quality or accuracy of the data.

12. On or about June 10, 2026, Ms. Nixon requested and obtained a copy of her consumer disclosure from Clarity.

13. Ms. Nixon's review of the disclosure revealed that Clarity was reporting inaccurate, contradictory, and misleading information, as detailed below.

**Inaccurate Driver's License Numbers**

14. Clarity's credit file on Ms. Nixon contains four separate driver's license entries – which is itself impossible, as Florida law permits a person to hold only one driver's license at a time.

15. The driver's license entry "XXXXXXXXXXX98B7" is 15 characters long, when a valid Florida driver's license number is exactly 13 alphanumeric characters.

16. A license entry with an incorrect number of digits has no chance of being accurate. The defect is evident from the entry itself, without reference to any outside information.

17. Reasonable procedures designed to assure maximum possible accuracy of consumer reports would have flagged and rejected this entry, rather than incorporating it into reports and selling them.

18. Lenders rely on driver's license data to confirm a consumer's identity; the presence of impossible license data in Ms. Nixon's file creates the false

impression that her identity cannot be confirmed, directly damaging her creditworthiness.

## Clarity Improperly Redacted Account Numbers

19.    Clarity's disclosure to Ms. Nixon included two tradelines, one each reported to Clarity by Chinook/Path Lending and CCBank/SunUp.

20.    Clarity disclosed these accounts with all but the last four digits of the account numbers redacted.

21.    The FCRA requires a consumer reporting agency, upon a consumer's request, to "clearly and accurately disclose to the consumer … [a]ll information in the consumer's file at the time of the request." 15 U.S.C. § 1681g(a)(1).

22.    Nothing in the FCRA authorizes a consumer reporting agency to redact a tradeline account number in a consumer's disclosure.

23.    Because Clarity has masked the account number, Ms. Nixon cannot determine from the disclosure whether the account Clarity reports is in fact her account, whether the balance, status, and payment history Clarity attributes to that number are accurate, or whether the tradeline belongs to a different consumer altogether.

24.    Thus, the redaction does not aid the accuracy of the disclosure – it forecloses her ability to verify the underlying data at all.

## Clarity's File Contains Conflicting Housing Information

25.    Clarity's disclosure to Ms. Nixon indicated that during overlapping timeframes, Ms. Nixon's housing status was "OWN," "RENT" and "UNKNOWN."

26.    For example, Clarity reported Ms. Nixon's housing status as "OWN" from March 26, 2023 through April 13, 2026; "RENT" from December 1, 2022 through November 27, 2025; and, "UNKNOWN" as of December 8, 2025.

27.    The multiple and contradictory housing statuses Clarity reported for Ms. Nixon cannot all be simultaneously accurate.

28.    Many subprime lenders – the type Clarity services almost exclusively – use housing status to gauge risk. Clarity's reporting of conflicting housing statuses for Ms. Nixon within a single file undermines the reliability of that data point and leads to less favorable lending terms, or outright denials of credit, for Ms. Nixon.

29.    Clarity also frequently misreported Ms. Nixon's length of residential history, often contradicting itself in its own reporting.

30.    Clarity's file contains eight different "Months at Address" values for Ms. Nixon, including: 0 Months, 3 Months, 18 Months, 24 Months, 36 Months and 48 Months – figures that cannot all be simultaneously accurate.

31.    The overlapping and contradictory residential timelines Clarity reported – including Clarity's repeated reports that Ms. Nixon had resided at her current address for "0 Months" – create a facially inaccurate and frankly nonsensical residential history that violates the mandate of 15 U.S.C. § 1681e(b) and creates the negative and false impression that Ms. Nixon has recently moved, has been unhoused, moves residences frequently, or resides at multiple residences simultaneously.

**Clarity's File Contains Inaccurate Employment Information**

32.     Clarity's employment data also contains substantial distortions about Ms. Nixon's employment history.

33.     Clarity's file contains nine different "Months at Employer" values for Ms. Nixon, including: 0 Months, 3 Months, 9 Months, 18 Months, 48 Months and 61 Months. It is not logically possible for an employee to simultaneously have these contradictory employment tenures.

34.     For example, on July 31, 2025 at 10:11:50 AM, Clarity reported Ms. Nixon had been with her employer for 3 Months. Just 1 minute later, at 10:13:18 AM, Clarity reported Ms. Nixon had been with her employer for 1 Months. It is impossible for a consumer to lose 2 months of employment history in 1 minute on a single day.

35.     The multiple timeline impossibilities Clarity incorporated into Ms. Nixon's credit file with respect to her employment tenure create a misleading and unreliable record of Ms. Nixon's employment stability and the damaging impression that Ms. Nixon was either repeatedly unemployed or had a tendency to abruptly switch occupations.

36.     Additionally, Clarity incorporated an invalid employer address of "NULL NULL NULL" into Ms. Nixon's credit file.

37.     Such reporting provides no meaningful information to a potential lender and was the likely result of the insertion of default, dummy, or placeholder data by Clarity.

38. Thus, Clarity's systems are literally programmed to insert false information into consumer credit files in many instances, despite the FCRA's mandate to utilize procedures designed to ensure maximum possible accuracy of information.

39. Clarity's reporting further demonstrates a basic failure to confirm that data is being placed in the correct section of her credit file. The value "DIASBLITY VETERN," "DISABILITY," "PENSION," and "VETERAN DISABILITY" each appear in Ms. Nixon's file as both an Employer Name and an Occupation.

40. An employer is a business; an occupation is a job function the consumer performs. These are categorically distinct types of information, and Clarity's own disclosure separates them into distinct sections.

41. The appearance of the same value in both fields is the signature of an intake process that accepts whatever data furnishers transmit without confirming the data is even being placed in the correct field. A reasonable procedure to assure maximum possible accuracy would, at minimum, refuse to populate the Occupation field with values that are obviously company names.

42. Clarity also incorporated "NULL NULL NULL" as a valid Employer Address in Ms. Nixon's credit file, yet again demonstrating its lack of reasonable procedures.

43. Despite information like this being made-up, dummy, placeholder data, Clarity does not disclose this fact to consumers or to creditors when it sells the data.

**Clarity's File Contains Logically-Impossible Pay Frequencies**

44.     Clarity's reporting of Ms. Nixon's pay frequency is likewise internally inconsistent.

45.     Clarity's file lists four different pay frequencies for Ms. Nixon – "ANNUALLY," "BIWEEKLY," "MONTHLY" and "SEMIMONTHLY" – even though a consumer is paid on only one schedule at any given time.

46.     For example, on December 8, 2025, Clarity incorporated data into its file indicating Ms. Nixon was paid annually, when five days prior Clarity incorporated data indicating Ms. Nixon was paid semimonthly.

47.     These pay schedules are mutually exclusive. A person paid weekly is not also paid monthly, and a person paid biweekly (every two weeks) is not also paid semimonthly (twice per month on fixed dates).

48.     Of particular significance, Clarity reported Ms. Nixon's pay frequency as "ANNUALLY" – a claim that virtually no ordinary employee's pay schedule could match.

49.     Most U.S. states require employers to pay wages at least once per month, and many require pay at least semimonthly or biweekly. According to data published by the U.S. Bureau of Labor Statistics, the dominant payroll cycles among U.S. employers are biweekly, weekly, semimonthly, and monthly. Annual payment is not a meaningful category of ordinary payroll.

50.     A "pay frequency" of "ANNUALLY" would mean Ms. Nixon goes a full year between paychecks – a circumstance that, for a non-executive employee, is

implausible on its face and would in many jurisdictions be unlawful for the employer to maintain.

## Clarity's Payment Date Information Contains Logical Impossibilities

51.    On December 8, 2025, Clarity incorporated data into Ms. Nixon's credit file reporting that her next paycheck would arrive on January 1, 2001 – a date that had already passed more than 25 years earlier.

52.    By definition, a "next paycheck" date refers to a future payday; reporting a date that, on the very day of the report, was already in the past is a logical impossibility on the face of the data.

53.    Clarity knew, or in the exercise of any reasonable procedure should have known, that no employed consumer's next paycheck could be scheduled for a day that had already passed when the report was generated.

54.    The majority of lenders to whom Clarity sells reports thoroughly examine a consumer's employment history and income data to verify the consumer has a history of reliable employment and stable income.

55.    Lenders to whom Clarity sells reports also rely on the identifying information in those reports – such as the consumer's name, date of birth, and address – both to confirm that the report describes the applicant and to assess the risk that an application is fraudulent or that the file has been mismatched to the wrong person. Clarity markets risk scores and fraud-detection products to those lenders.

56.    A file carrying inconsistent or facially improbable identifying information tends to present the consumer as a higher fraud or identity risk and

impairs the lender's ability to verify the consumer's identity during underwriting.

57. Consequently, Clarity's inclusion of demonstrably false information about Ms. Nixon's date of next paycheck, driver's license information, employer address, housing status, months at address, months at employer, and pay frequency had a significant negative impact on Ms. Nixon's ability to obtain new credit with favorable terms.

58. Each of the multiple reports sold by Clarity contained false information about Ms. Nixon's date of next paycheck, driver's license information, employer address, housing status, months at address, months at employer, net monthly income, pay frequency, and more.

59. Clarity was required to follow reasonable procedures to assure maximum possible accuracy of the information concerning Ms. Nixon.

60. Clarity has been sued dozens of times in the past for incorporating similar incorrect data into a consumer's file, and was thus aware when it sold reports on Ms. Nixon that, under a best-case scenario, it was selling data and other information it knew it had gathered without regard to accuracy or completeness.

61. Additionally, when Ms. Nixon requested her credit file disclosure from Clarity on June 10, 2026, Clarity provided Ms. Nixon with only a redacted version of her credit file. Clarity redacted all but the last few digits of the driver's license, as well as the account numbers of the credit accounts in the disclosure.

62. Nothing in the FCRA allowed Clarity to redact this information, but it did so anyway.

**Clarity Fails to Meaningfully Disclose Legally Required Information**

63.    As set forth above, on or about June 10, 2026, Ms. Nixon requested a copy of her consumer credit disclosure from Clarity.

64.    Upon receipt of Ms. Nixon's request, Clarity was required to disclose all information "clearly and accurately" in the credit file, including the identity of each person who obtained a consumer report within the prior year. *See* 15 U.S.C. § 1681g(a)(3)(A)(ii).

65.    The FCRA defines "Identification" as "the name of the person or, if applicable, the trade name (written in full) under which such person conducts business." *See* 15 U.S.C. § 1681g(a)(3)(B)(i).

66.    Frequently, Clarity fails to fulfill its legal obligations regarding disclosure of this data, often disclosing what can be fairly called incomprehensible information which virtually no one would comprehend.

67.    For example, Clarity's disclosure shows an inquiry made on April 20, 2026 which Clarity identified to Ms. Nixon only as "Experian on behalf of Quick Credit/Tls/Cortex." This single inquiry purports to identify three separate end users – "Experian on behalf of Quick Credit," "Tls," "Cortex" – bundled together as one entry, with no indication which of these entities actually requested the report or what their relationship to one another is.

68.    The FCRA requires identification of *each* person who obtained a consumer report – not a slash-delimited list of candidates from which the consumer is left to guess.

69. This pattern is not isolated. Clarity's disclosure contains additional inquiries reported in the same opaque, bundled format.

70. On November 27, 2025, Clarity disclosed an inquiry as "CCFLOW/TLS/AF247" – again purporting to identify three separate end users ("CCFLOW," "TLS," "AF247") within a single entry, without naming any one of them as the actual requesting party or providing the full trade name of any.

71. Likewise, Clarity disclosed an inquiry on December 8, 2025 as "RISE/CCBank/EDS/PreQual," a bundle in which Ms. Nixon's recognition of "RISE" as a consumer lender does not tell her whether that entity, or "CCBank," "EDS," and "PreQual," actually obtained her consumer report.

72. Likewise, Clarity disclosed an inquiry on July 31, 2025 as "Uplift Loans/Tekambi/Financial Technologies," a bundle in which Ms. Nixon's recognition of "Uplift Loans" as a consumer lender does not tell her whether that entity, or "Tekambi" and "Financial Technologies," actually obtained her consumer report.

73. Whether bundled with a recognizable name or composed entirely of opaque abbreviations, none of these disclosures provided Ms. Nixon with the address, phone number, or other contact information that would allow her to identify which entity actually obtained her consumer report or to follow up with that entity directly.

74. Multiple consumers have previously sued Clarity for failing to disclose the names of entities obtaining credit reports as legally required.

75.     Clarity's incomplete disclosure of who accessed Ms. Nixon's credit report and why caused Ms. Nixon significant frustration, stress, and concern.

**Clarity's Lack of Standards Constitute Willful Violations of the FCRA**

76.     Clarity operates in stark contrast to its parent company, Experian.

77.     While Experian enforces Metro 2 guidelines – industry standards which contain hundreds of pages of explanation on how to report information, covering almost any conceivable scenario, and which is used by other large CRAs and serves as a lingua franca – Clarity requires no such compliance with Metro 2 guidelines and has no discernible quality-assurance standards.

78.     In place of an industry-standard data-quality framework, Clarity's operative "standard" is to ingest and republish whatever data its furnishers transmit, without applying even rudimentary validity checks. Clarity's file on Ms. Nixon is the direct product of that approach: it incorporates and sells information that is not merely unverified, but facially impossible – information that no reasonable data-quality procedure could have permitted to enter a consumer report.

79.     The inaccuracies in Ms. Nixon's file are not isolated transcription errors traceable to a single furnisher.

80.     They span multiple categories of the data Clarity reports – including date of next paycheck, driver's license information, employer address, housing status, months at address, months at employer, net monthly income, pay frequency, and phone-number information – and they share a common signature: each is the kind of

error that a single, elementary validity check would have caught before the data was incorporated into Ms. Nixon's file and sold to creditors.

81.    Clarity instead operates a system designed to accept and resell that data as if it were genuine.

82.    Clarity is not unaware that this is occurring. Clarity has been the subject of repeated FCRA litigation arising from the same categories of inaccuracy described in this complaint – invalid driver's license entries, opaque or bundled inquiry disclosures, contradictory residential and employment histories, and the wholesale incorporation of placeholder or impossible data.

83.    Despite this notice, Clarity has continued to operate its systems in materially the same way, without implementing the basic validity checks that would have prevented the errors complained of here.

84.    Clarity's decision to forgo the quality controls used by its parent company and by other major consumer reporting agencies, in the face of repeated notice that this decision causes ongoing harm to consumers, constitutes a reckless disregard for the rights of the consumers whose data it sells, including those of Ms. Nixon.

**Damages Suffered by Ms. Nixon**

85.    As a result of the Defendant's actions, Ms. Nixon has suffered damages, including wasted time trying to figure out what the information in her Clarity file means and how it got there, lost financial opportunities, denial of credit, less

favorable credit terms, lower credit scores, significant emotional distress and aggravation, and damage to her reputation.

86. As of the date of this filing, Clarity continues to include the aforementioned false information in Ms. Nixon's credit file. As such, Ms. Nixon demands that Clarity conduct an investigation upon service of this lawsuit and correct her file within 30 days.

87. Ms. Nixon has hired the undersigned law firm to represent her in this matter and has assigned the firm her right to fees and costs.

## COUNT I
## CLARITY'S WILLFUL VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681e(b)

88. Ms. Nixon adopts and incorporates paragraphs 1 through 87 as if fully stated herein.

89. Clarity willfully violated 15 U.S.C. § 1681e(b) when it failed to follow reasonable procedures to assure maximum possible accuracy of the consumer reports sold regarding Ms. Nixon, as Clarity sold consumer reports containing erroneous information about her date of next paycheck, driver's license information, employer address, housing status, months at address, months at employer, net monthly income, pay frequency, phone-number information, and more.

90. Clarity has been sued on numerous occasions for very similar situations and knows that it frequently sells reports with erroneous information about consumers.

91.     Clarity's conduct was thus willful or done with a reckless disregard for Ms. Nixon's rights under the FCRA.

92.     As a result of its conduct, Clarity is liable to Ms. Nixon for the greater of Ms. Nixon's actual damages or statutory damages of up to $1,000 for each occurrence, punitive damages, reasonable attorneys' fees, and costs, per 15 U.S.C. § 1681n.

WHEREFORE, Ms. Nixon respectfully requests this Honorable Court enter judgment against Clarity for:

a.     the greater of Ms. Nixon's actual damages and statutory damages of $1,000 per incident pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b.     punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c.     reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3); and

d.     such other relief that this Court deems just and proper.

**COUNT II**
**CLARITY'S NEGLIGENT VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681e(b)**
**(Pled in the Alternative to Count I)**

93.     Ms. Nixon adopts and incorporates paragraphs 1 through 87 as if fully stated herein, and pleads this count strictly in the alternative.

94.     Clarity owed Ms. Nixon a legal duty to utilize reasonable procedures to assure the maximum possible accuracy of its consumer reports regarding Ms. Nixon.

95.     Clarity violated 15 U.S.C. § 1681e(b) when it sold consumer reports

containing erroneous information about Ms. Nixon's date of next paycheck, driver's license information, employer address, housing status, months at address, months at employer, net monthly income, pay frequency, phone-number information, and more.

96.    Clarity's breach amounts to a negligent violation of 15 U.S.C. § 1681e(b), and Ms. Nixon is entitled to her actual damages, attorneys' fees, and costs, pursuant to 15 U.S.C. § 1681o.

WHEREFORE, Ms. Nixon respectfully requests this Honorable Court enter judgment against Clarity for:

a.    actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

b.    reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681o(a)(2); and

c.    such other relief that this Court deems just and proper.

### COUNT III
### CLARITY'S WILLFUL VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681g(a)(1)

97.    Ms. Nixon adopts and incorporates paragraphs 1 through 87 as if fully stated herein.

98.    Clarity violated 15 U.S.C. § 1681g(a)(1) when it failed to clearly and accurately disclose all the information it had in its file by providing Ms. Nixon with a redacted version of her Consumer Disclosure, including by redacting the account numbers on her Chinook/Path Lending, and CCBank/SunUp tradelines.

99. Clarity has been notified through litigation that its disclosures to consumers fail to properly disclose this information.

100. Clarity's conduct was thus willful and intentional, or, alternatively, was performed with reckless disregard for its duties under the FCRA.

101. As a result of its conduct, Clarity is liable to Ms. Nixon for the greater of Ms. Nixon's actual damages or statutory damages of up to $1,000 for each occurrence, punitive damages, reasonable attorneys' fees, and costs, per 15 U.S.C. § 1681n.

WHEREFORE, Ms. Nixon respectfully requests this Honorable Court enter judgment against Clarity for:

a. the greater of Ms. Nixon's actual damages and statutory damages of $1,000 per incident pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b. punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c. reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3); and

d. such other relief that this Court deems just and proper.

**COUNT IV**
**CLARITY'S NEGLIGENT VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681g(a)(1)**
**(Pled in the Alternative to Count III)**

102. Ms. Nixon adopts and incorporates paragraphs 1 through 87 as if fully stated herein, and pleads this count strictly in the alternative.

103.   Clarity owed Ms. Nixon a legal duty to accurately disclose all the information in her credit file upon her request.

104.   Clarity breached this duty when it provided Ms. Nixon with a redacted version of her Consumer Disclosure, including by redacting the account numbers on her Chinook/Path Lending, and CCBank/SunUp tradelines.

105.   Clarity's breach amounts to a negligent violation of 15 U.S.C. § 1681g(a)(1), and Ms. Nixon is entitled to her actual damages, attorneys' fees, and costs pursuant to 15 U.S.C. § 1681o.

WHEREFORE, Ms. Nixon respectfully requests this Honorable Court enter judgment against Clarity for:

a.   actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

b.   reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681o(a)(2); and

c.   such other relief that this Court deems just and proper.

## COUNT V
## CLARITY'S WILLFUL VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681g(a)(3)(A)(ii)

106.   Ms. Nixon adopts and incorporates paragraphs 1 through 87 as if fully stated herein.

107.   Clarity violated 15 U.S.C. § 1681g(a)(3)(A)(ii) when it failed to identify each person, including the end-user, that procured Ms. Nixon's consumer report during the one-year period preceding the date upon which she made the request.

108. Clarity is aware that its consumer disclosures fail to properly identify end-users via multiple consumer lawsuits.

109. Clarity's conduct was willful, intentional, and exhibited a reckless disregard for its duties to provide clear and accurate disclosures.

110. As a consequence, Clarity is liable to Ms. Nixon for the greater of Ms. Nixon's actual damages or statutory damages of up to $1,000 for each occurrence, punitive damages, and reasonable attorneys' fees and costs, pursuant to 15 U.S.C. § 1681n.

WHEREFORE, Ms. Nixon respectfully requests this Honorable Court enter judgment against Clarity for:

a.     the greater of Ms. Nixon's actual damages and statutory damages of $1,000 per incident pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b.     punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c.     reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3); and

d.     such other relief that this Court deems just and proper.

## COUNT VI
## CLARITY'S NEGLIGENT VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681g(a)(3)(A)(ii)
**(Pled in the Alternative to Count V)**

111. Ms. Nixon adopts and incorporates paragraphs 1 through 87 as if fully stated herein, and pleads this count strictly in the alternative.

112. Clarity owed Ms. Nixon a legal duty to disclose the identity of each user that obtained her consumer report within one year of Ms. Nixon's request.

113. Clarity breached this duty when it failed to identify each person, including end-users, who procured Ms. Nixon's consumer report.

114. Clarity's breach amounts to a negligent violation of 15 U.S.C. § 1681g(a)(3)(A)(ii), and Ms. Nixon is entitled to her actual damages, attorneys' fees, and costs pursuant to 15 U.S.C. § 1681o.

WHEREFORE, Ms. Nixon respectfully requests this Honorable Court enter judgment against Clarity for:

a. actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

b. reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681o(a)(2); and

c. such other relief that this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all issues so triable.


Respectfully submitted on July 15, 2026, by:


                              **SERAPH LEGAL, P. A.**

                              /s/  *Bryan J. Geiger*
                              Bryan Geiger, Esq.
                              Florida Bar No.: 119168
                              BGeiger@seraphlegal.com
                              Service@seraphlegal.com
                              3505 E. Frontage Rd., Suite 145
                              Tampa, FL 33607
                              Tel: 813-567-1230
                              Fax: 855-500-0705
                              *Lead Counsel for Plaintiff*